GATES COUNTY v. A. C. HILL.

(Filed 21 February, 1912.)

1. **Evidence, Conflicting—Nonsuit.**

A motion to nonsuit upon conflicting and competent evidence will be denied.

2. **Instructions—Public Square—Abandonment—Adverse Possession —Evidence.**

When a county sues for the possession of lands used by it as a public square, a requested instruction by defendant is properly denied, in the absence of evidence of abandonment, that if the proper authorities of a public square willfully abandon the use of any part thereof which is claimed by defendant, and establish a different line, cutting off such abandoned part for twenty-one years or more, it would ripen into a title for defendant.

3. **Instructions—Public Square—Adverse Possession—Interpretation of Statutes.**

A county having entered into the possession of a square for the public use, before act of 1891, now Revisal, sec. 389, the provisions of that act will not permit the plaintiff to acquire title thereto by adverse possession under a deed purporting to convey a part thereof.

4. **Practice—New Trial—Newly Discovered Evidence—Cumulative.**

A new trial for newly discovered evidence will not be granted when the evidence is only cumulative.

5. **Practice — New Trial — Newly Discovered Evidence — Supreme Court—Discretion.**

A motion for a new trial upon newly discovered evidence made in the Supreme Court is addressed to the discretion of the Court, and in this appeal, the evidence relied on being the relation of the jurors to some of the commissioners of the plaintiff county, the relationship is regarded as too remote for the exercise of this discretion.

APPEAL from *Cline, J.,* at July Special Term, 1911, of GATES.

This is an action to recover a lot of land, alleged to be a part of the public square of Gates County. There was a verdict in favor of the plaintiff, and the defendant appeals from a judgment rendered thereon.

*A. P. Godwin, Ward & Grimes, and W. M. Bond for plaintiff.*
*L. L. Smith for defendant.*

PER CURIAM.   The defendant relies on two exceptions in his brief, the first being to the refusal of his motion to nonsuit the plaintiff, and the second to the failure of his Honor to instruct the jury, as requested, that the defendant could rely on adverse possession as a defense.

The controversy between the parties is one of fact, the plaintiff contending that the deed under which it claims covers the *locus in quo* and the defendant contending to the contrary, and as evidence was introduced supporting both contentions, the motion to nonsuit was properly denied.

The prayer for instruction was as follows:  "Although the law is that possession of any part of a public square or street which has been dedicated to the public cannot ripen into a title, yet, if the proper authorities of a public square or street shall purposely and willfully abandon the use of any part thereof and establish a different line, cutting off such abandoned part, and there is continuous possession under a deed for such abandoned part for twenty-one years or more, then such possession would ripen into a title and vest the title in the possessor under the deed; and if you find from the preponderance of the testimony that the defendant, and those under whom he claims, have been in possession of the land in controversy, under such circumstances, for more than twenty-one years, then the title vested in the possessor thereof, and cannot be divested, except by twenty years possession adverse to him."

This was properly refused, because there was no evidence that the plaintiff willfully abandoned a part of the public square and established a different line.   Also, the first actual occupation by the defendant of the land in controversy was in 1889, two years before the act of 1891, now section 389 of the Revisal, which reads as follows:  "No person or corporation shall ever acquire any exclusive right to any part of any public road, street, lane, alley, square, or public way of any kind by reason of the occupancy thereof or by encroaching upon or obstructing the same in any way, and in all actions, whether civil or criminal, against any person or corporation on account of any encroachment upon or obstruction of or occupancy of any public

way it shall not be competent for any court to hold that such action is barred by any statute of limitations."

The defendant also moves in this Court for a new trial, upon the ground of newly discovered evidence and because some of the jurors were related to members of the Board of Commissioners of Gates County.

An examination of the affidavits on file and a comparison of them with the evidence introduced on the trial show that the new evidence is purely cumulative, and when this is true a new trial will not be granted.

The relationship of the jurors, as stated by the defendant, is as follows: One of the jurors, to wit, Job Freeman, is the father-in-law of T. J. Carter, one of the present county commissioners; another, J. E. Harrell, is the stepson of the father of B. D. Lawrence, one of the commissioners in 1891; and another, J. A. Eason, is first cousin to the father of the wife of E. S. A. Ellenor, one of the present county commissioners.

This is a motion addressed to our discretion, and in our opinion the interest and bias of the jurors, if any, is too remote to justify us in disturbing the verdict of the jury.

No error.